IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:13CV148-RJC-DSC

| | |
|---|---|
| KIMBERLY D. WILSON,<br>Plaintiff, | )<br>)<br>) |
| vs. | )    MEMORANDUM AND RECOMMENDATION<br>) |
| CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security Administration,<br>Defendant. | )<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #9) and "Memorandum in Support ..." (document #10), both filed October 24, 2013; and Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support ..." (document #14), both filed January 17, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on July 26, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

1

On July 13, 2010, Plaintiff filed an application for a period of disability and Social Security Disability Insurance Benefits ("DIB"), alleging that she was unable to work after April 26, 2009. (Tr. 130-37).

Plaintiff's application was denied initially and upon reconsideration. (Tr. 55-89, 91-97). Plaintiff subsequently requested a hearing which was held on December 2, 2011. (Tr. 34-54).

On December 29, 2011, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 21-30). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 23). The ALJ also found that Plaintiff suffered from spinal disorders, right shoulder disorder, arthralgias, obesity and depressive disorder, which were severe impairments within the meaning of the regulations, Id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 24). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform unskilled "light work[3] ... except frequent climbing of ramps/stairs; occasional climbing ladders/ropes/scaffolds, balancing, stooping, and crouching; occasional reaching overhead with the left upper extremity; no reaching overhead with the right upper extremity; and which is limited to simple tasks." (Tr. 25). Based upon that RFC, the ALJ found that Plaintiff could not perform her past relevant work as a medical billing expert, intake person, reception/billing clerk,

---

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

or receptionist, since those occupations involved skilled or semi-skilled work. (Tr. 29).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified light work (crossing guard, food prep worker, cafeteria line worker, food service concession stand worker, maid, dishwasher, assembler, production machine tender and hand packer) that Plaintiff could perform. The V.E. testified that 62,078 of those jobs existed in North Carolina. (Tr. 30). The ALJ found Plaintiff capable of performing jobs existing in significant numbers in the national economy, and concluded that she was not disabled during the relevant period. Id.

Plaintiff filed a timely Request for Review by the Appeals Council.

By notice dated March 27, 2013, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-5).

Plaintiff filed the present action on May 28, 2013. She assigns error to the ALJ's assessment of the opinions of two consultative psychologists, Doctors Michael Riordan and Michael Fiore, and to his conclusion that her gastrointestinal conditions did not amount to a severe impairment. See Plaintiff's "Memorandum in Support ..." at 1, 7-10 (document #10). The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The issue before the ALJ was whether Plaintiff became disabled at any time.[4] The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. It is Plaintiff's burden, however, to establish her RFC by showing how those impairments affect her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The ALJ's RFC determination is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history, as well as the opinions of state agency reviewing physicians. (Tr. 28, 55-68, 70-84). The ALJ explained that opinions of the non-examining physicians are not entitled to controlling weight, but must be considered "as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

issues in disability claims under the social security act." (Tr. 19). See Lusk v. Astrue, No. 1:11cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence, citing 20 C.F.R. §§ 404.1527(c) and (e), 416.927(c) and (e)). See also Stanley v. Barnhart, 116 Fed. App'x 427, 429 (4th Cir. 2004); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Plaintiff argues that the ALJ failed to properly evaluate the consulting opinions of Doctors Riordan and Fiore. The ALJ must consider opinions provided by medical sources "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184, at *7. The ALJ must also address those opinions and – if they conflict with the adjudicator's assessment of the claimant's residual functional capacity ("RFC") – must explain why the opinions were not adopted. SSR 96-8p, available at 1996 WL 374184, at *7. The ALJ complied with these requirements and his assessment of those opinions is supported by substantial evidence.

The ALJ accurately quoted Dr. Riordan's opinion that Plaintiff "'would have difficulty maintaining competitive employment on a full time basis.'" (Tr. 26, quoting Tr. 278). The ALJ also summarized Dr. Riordan's finding that, although Plaintiff's mood appeared depressed, the remainder of her mental status examination was within normal limits (Tr. 26, referring to Tr. 277; see also Tr. 28). Dr. Riordan also found that Plaintiff's speech was logical, relevant, and coherent; she had no difficulty with attention, concentration, or memory; and she had average intelligence, insight, and judgment (Tr. 277).

The ALJ emphasized that Dr. Riordan's opinion was "remote" in time. (Tr. 29, 132).

Although Dr. Riordan opined in January 2006 that it "appear[ed]" at that time that Plaintiff would "have difficulty" maintaining full-time competitive employment (Tr. 278), she actually worked through the first four months of 2009. (Tr. 14, 171).

Dr. Riordan's opinion about Plaintiff's ability to work concerns an issue reserved for the Commissioner. Pursuant to SSR 96-5p, available at 1996 WL 374183, at *3, an adjudicator may "never" afford "special significance" to such opinions, because that "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."

The ALJ properly concluded that Dr. Riordan's opinion was "not supported by subsequent mental status examinations and more recent treatment records which . . . document few objective mental abnormalities." (Tr. 29). The ALJ noted that Dr. Fiore reported in September 2010 that Plaintiff engaged in relevant, organized, coherent, and goal-directed conversation (Tr. 457-58); her memory functions were within normal limits (Tr. 458-60); she demonstrated fair judgment and insight (Tr. 459); she appeared to function within the average to high average range of intelligence (Tr. 460); and she maintained adequate attention and concentration when performing repetitive tasks. (Tr. 460).

In support of this assignment of error, Plaintiff cites only a few records generated by a social worker who saw her twice in May 2011, once in June 2011, and once in November 2011 (Document #10 at 7, referring to Tr. 491-94). On each of those visits, the social worker checked two or three boxes on a one-page form and wrote a brief narrative. (Tr. 491-94). Those records are silent as to any finding of depression. (Tr. 492 & 493).

The ALJ did afford "significant weight" to the opinions provided by the state agency psychologists. (Tr. 28, referring to Tr. 55-68, 70-84). Those psychologists cited Dr. Riordan's

report (Tr. 57, 73), and opined that Plaintiff retained the ability to perform only simple tasks (Tr. 63-64, 79). That limitation that was included in the ALJ's RFC finding. (Tr. 25). Dr. Fiore's assessment, discussed below, supports the conclusion that Plaintiff "'was capable of understanding and following simple instructions.'" (Tr. 27, quoting Tr. 460).

The ALJ accurately quoted Dr. Fiore's finding that Plaintiff did not appear to be "'capable of tolerating [the] normal stresses, pressures, and physical demands associated with a full-time work routine.'" (Tr. 27, quoting Tr. 460). This opinion also concerns an issue reserved for the Commissioner. As stated above, an adjudicator can "never" give "special significance" to such opinions. SSR 96-5p, available at 1996 WL 374183, at *3.

The ALJ properly concluded that Dr. Fiore's opinion "is not supported by [his] own mental status examination." (Tr. 29). Dr. Fiore reported that Plaintiff engaged in relevant, organized, coherent, and goal-directed conversation (Tr. 457-58); her memory functions were within normal limits (Tr. 458-60); she demonstrated fair judgment and insight (Tr. 459); she appeared to function within the average to high average range of intelligence (Tr. 460); and she maintained adequate attention and concentration when performing repetitive tasks. (Tr. 460).

As with Dr. Riordan's opinion, Plaintiff cites to the same records from a social worker, (Document #10 at 7, referring to Tr. 491-94). They do not establish that Plaintiff suffered from any mental limitations beyond those in the ALJ's RFC assessment. (Tr. 25). Dr. Fiore's objective findings support the state agency experts' conclusion that Plaintiff could perform only simple tasks. (Tr. 25).

Plaintiff also argues that remand is warranted because "the ALJ erred by not considering the effects of [Plaintiff's] [rectal] bleeds and chronic diarrhea in the RFC" (Document #10 at 9).

To the contrary, substantial evidence supports the ALJ's treatment of Plaintiff's gastrointestinal conditions. The ALJ considered the evidence that Plaintiff "has had intermittent bleeding from hemorrhoids for many years." (Tr. 28, referring to Tr. 212, 239, 243, 245, 248, 252, 426, 429, 433, 436, 439, 452, 463, 466, 496, 499, 505). The ALJ also addressed the evidence that Plaintiff suffered from irritable bowel syndrome, which causes chronic diarrhea. (Tr. 23, referring to Tr. 239, 243, 245, 248, 252, 305).

As the ALJ properly concluded, Plaintiff's rectal bleeding and chronic diarrhea would not result in significant vocational restrictions. (Tr. 23, 28). The record shows that Plaintiff suffered from rectal bleeding since at least August 1990, nearly twenty years before her alleged onset date. (Tr. 452, 463, 466, 496, 499, 505). The evidence also shows that Plaintiff has suffered from chronic diarrhea since at least June 2005, nearly four years before her alleged onset date. (Tr. 251). Plaintiff worked throughout 2006 -2009, (Tr. 141, 171), even though she reported suffering from rectal bleeding (Tr. 426, 429, 433, 436, 439) and chronic diarrhea (Tr. 245, 251, 426, 429, 433, 436) during that time. As the ALJ noted, Plaintiff's colonoscopy in July 2010 did not reveal any complications associated with her hemorrhoids or diverticula. (Tr. 23, referring to Tr. 475).

The state agency physicians repeatedly cited Plaintiff's complaints of rectal bleeding (Tr. 59, 63, 74, 76, 78) and irritable bowel syndrome. (Tr. 55, 61, 62, 63, 74, 77, 78). They opined that those conditions did not cause any limitations beyond those included in the ALJ's RFC assessment. (Tr. 25, 61-63, 77-78). See, e.g., Gregory v. Astrue, No. 11-cv-30281-KPN, 2012 WL 5899235, at *5 (D. Mass. Oct. 25, 2012) (notwithstanding fact that adjudicator did not reference particular statement from medical source, he properly considered that statement by

weighing the opinions of state agency doctors who had considered it).

Although the medical records establish that the Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #9) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16

(4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: January 27, 2014

David S. Cayer
United States Magistrate Judge